UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KAPPA FARID,

<em>Plaintiff</em>,

-against-

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT ("NYPD") DEPUTY
INSPECTOR KENNETH NOONAN,
individually, and in his capacity as NYPD Deputy
Inspector, and NYPD SERGEANT JOHN
TUSCANO,

<em>Defendants</em>.
-----------------------------------------------------------X

**Docket No.: 19-cv-3463**

**AMENDED COMPLAINT**

**<u>JURY TRIAL DEMAND</u>**

Plaintiff, Kappa Farid ("Plaintiff"), by and through his attorneys, Ballon Stoll Bader & Nadler, P.C., complaining of Defendants, The City of New York ("City of New York" or "City"), New York City Police Department ("NYPD") Deputy Inspector Kenneth Noonan, and NYPD Sergeant John Tuscano (collectively, "Defendants"), alleges upon personal knowledge, unless where information and belief is stated, the following:

1. This action seeks to vindicate the rights of the Plaintiff in the NYPD's 123rd Precinct, who was discriminated and subjected to a hostile work environment based on his age and national origin.

2. This is an action brought for substantial compensatory damages and reasonable counsel fees premised upon the Defendants' continuing acts of unlawful discrimination, and harassment, based on Plaintiff's age and national origin, for his marginalization, unlawful employment discrimination and retaliation, and unlawful hostile work environment, and loss of pay and monetary benefits, in violation of the Age Discrimination in Employment Act

1

("ADEA"), 29 U.S.C. § 621 et seq., Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 et seq. ("Title VII"), Executive Law of the State of New York, New York State Human Rights Law ("Executive Law") § 296, et seq., and the Administrative Code of the City of New York, New York City Human Rights Law ("Administrative Code"), § 8-101, et seq., and assault and intentional infliction of emotional distress.

## JURISDICTION AND VENUE

3.      This court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331 and 42 U.S.C. §§ 2000-e5(f)(1),5(f)(3), and supplemental jurisdiction over the State and City law claims pursuant to 28 U.S.C. § 1367.

4.      As the Eastern District is the district where a substantial part of the events giving rise to the claims occurred, venue is proper within this district pursuant to 28 U.S.C. § 1391 (a)(2).

5.      Plaintiff filed a charge with the EEOC against Defendants on January 29, 2019 complaining of discrimination on the basis of age and national origin as alleged in this complaint.

6.      On March 15, 2019, the EEOC issued a right to sue letter under the ADEA and Title VII (attached hereto as **Exhibit 1**).

## THE PARTIES

*Plaintiff*

7.       Plaintiff is a fifty-four (54) year old male whose date of birth is December 7, 1964. Plaintiff is of Egyptian descent and his first language is Arabic.

2

8.      Plaintiff is a "person" within the meaning of Executive Law § 292(1), and within the meaning of New York City Administrative Code § 8-102(1).

9.      Plaintiff resides in Staten Island, New York.

10.     Plaintiff holds the title of Sergeant in the NYPD.

*Defendants*

11.     Defendant City of New York is a municipal corporation existing by virtue of the laws of the State of New York.   City of New York, through the NYPD, is liable for the discrimination and retaliation Plaintiff suffered.

12.     Defendant City is an employer within the meaning of Executive Law § 292(5), and within the meaning of New York City Administrative Code § 8-107(5).   Upon information and belief, the NYPD employs approximately 40,000 police officers throughout City of New York.

13.     At all relevant times herein, Plaintiff was employed by the Defendant City at its NYPD.

14.     Defendant Noonan is employed by the City's NYPD as a Deputy Inspector.

15.     Upon information and belief, Defendant Noonan had supervisory authority over the personnel in the 123rd Precinct; and, upon further information and belief, he is a key decision-maker as to personnel and staffing matters.

16.     Defendant Tuscano was employed by the City's NYPD as a Sergeant in the 25th Precinct at the time Plaintiff reported derogatory comments to the EEO (as discussed in paragraph 22, herein).

**JURY DEMAND**

17.     Plaintiff hereby demands a trial by jury in this action.

**FACTS**

18.    Throughout Plaintiff's time in the NYPD he has been subjected to a hostile work environment and severe discrimination on the basis of his age and national origin, and retaliation at the hands of Defendants.

19.    From in or about 2015 to and including 2016, Defendant Tuscano constantly and regularly humiliated Plaintiff by calling him derogatory names and mocking Plaintiff's foreign, Arabic accent.

20.    Defendant Tuscano told Plaintiff, "You have to learn how to speak English;" and that he could not understand Plaintiff's (foreign, Arabic) accent, even though Plaintiff communicated in clear, understandable English.  He told Plaintiff that Plaintiff was "speaking gibberish."  These remarks came shortly after Plaintiff complained to other supervisors that Defendant Tuscano was making certain mistakes in regards to claim analysis.

21.    Shortly after, in or about 2016, another police officer, Gorman, called Plaintiff a "sand monkey" and exclaimed that Plaintiff should "go back to where you belong".

22.    In or about 2016, Plaintiff complained of these derogatory comments, set forth in paragraphs 19-21, herein, that were patently insulting and discriminatory on the basis of Plaintiff's national origin to a supervisor, Lieutenant Gonzalez, and in or about 2016, Plaintiff reported these derogatory comments that were patently insulting and discriminatory on the basis of Plaintiff's national origin to the Equal Employment Opportunity Office of the NYPD ("EEO-NYPD").  The EEO-NYPD gave Plaintiff the option of either choosing mediation or a reprimand. Plaintiff chose mediation but was never informed of the outcome of this mediation.

23.     In or about 2016, prior to Plaintiff reporting the derogatory comments to the EEO, Plaintiff intervened when he observed that Defendant Tuscano was hitting a civilian at the precinct. Defendant Tuscano reacted by clenching his fist and grinding his teeth directly at Plaintiff, which was reasonably construed by Plaintiff as an intention to immediately strike Plaintiff.

24.     Once Plaintiff reported the derogatory comments to the EEO, there was no change in the hostile workplace environment that Plaintiff was subjected to.

25.      In or about 2016, when the Internal Affairs Bureau (the "IAB") was notified of the EEO complaint, they went to Plaintiff's apartment when he was not present. The IAB frightened and intimidated Plaintiff's roommate, coercing her into letting them into the apartment to search the Plaintiff's room without any authority or permission.

26.     Sergeant Gregory Faljean was employed by the City's NYPD as a Sergeant in the 123rd Precinct at the time Plaintiff reported derogatory comments to the EEO (as discussed in paragraph 22).

27.     In or about April 2019, Plaintiff additionally complained to the IAB about Sergeant Faljean, who has pushed Plaintiff twice and sent the Plaintiff insulting text messages based on his age.

28.     The above comments and incidents are examples of the continuous and ongoing workplace environment that Plaintiff was subjected to on the basis of his national origin and age while working in the 123rd Precinct.

29.     From September 2016 through November 2018, Defendant Noonan was one of Plaintiff's supervisors.  On numerous occasions Defendant Noonan threatened Plaintiff, called him derogatory names, and mocked Plaintiff's foreign, Arabic accent.

30.     In October 2016, Defendant Noonan mockingly informed Plaintiff that he could not understand Plaintiff's (foreign, Arabic) accent.  In fact, during team meetings, Defendant Noonan would, pointedly, not permit Plaintiff to speak.  Plaintiff would be forced to stay silent throughout the entire meeting, even though the other participants at the meeting--all of whom were younger and non-Egyptian were asked for comments.

31.     At one point, in or about May 2018, Defendant Noonan even threatened Plaintiff with physical abuse by standing behind the Plaintiff and angrily stating to the Plaintiff to watch what he will do to the Plaintiff. This incident was witnessed by Lieutenant King and Sergeant Khykin.

32.     Plaintiff's counterparts--his fellow employees--all of whom were younger and non-Middle Eastern—were not subjected to threats of physical abuse at the hands of Defendant Noonan.

33.     Shortly after the above incident of threatened physical abuse in or about May 2018 and after Plaintiff had complained about the comments pertaining to his national origin and age, Defendant Noonan summarily changed Plaintiff's shift from the afternoon shift to the midnight shift.  Plaintiff requested that his shift remain the same as it would harm his marriage. Defendant Noonan responded, "I am stubborn and I will do what I want."

34.      As a result of this change Plaintiff's wife asked for a divorce.

35.     Other younger and non-Egyptian officers were permitted their requested shift changes for various, different personal reasons.  They included Sergeant Vaiano and Sergeant Nyhus.

36.     Defendant Noonan then changed Plaintiff's shift to the morning hours thereby causing Plaintiff to lose his night differential pay completely.

37.     In fact, Defendant Noonan told, a supervisor, Lieutenant Hasler, "I don't want to see (Plaintiff) on patrol" thereby preventing Plaintiff from obtaining overtime. Plaintiff was the only one in his unit who was excluded from working overtime.  Younger and non-Egyptian Sergeants were allowed overtime hours, including Sergeant Vaiano, Sergeant Pasynkov, and Sergeant Liter.

38.     As a result of being denied night differential pay and overtime benefits, on the basis of his age and national origin, Plaintiff has lost and will lose substantial income and monetary benefits.

39.     On October 2, 2018, Defendant Noonan threatened to harm Plaintiff physically by saying to Plaintiff, in an angry, hostile and threatening manner, "I will come and f--- you up." Plaintiff reasonably believed he was in immediate danger of being physically and violently attacked by Defendant Noonan.

40.     Plaintiff's younger, non-Middle Eastern counterparts were not subjected to the abusive behavior that threatened physical harm.

41.     Plaintiff reported this incident to the IAB on or about October 2, 2018, and he was immediately retaliated against by Defendant Noonan who, on or about October 2, 2018, gave Plaintiff a Command Discipline.

42.     On or about November 2018, Defendant Noonan was promoted.  Lieutenant McGuiness (Plaintiff's immediate supervisor) complained about the October 2, 2018, threat from Defendant Noonan only to have found out that the NYPD had changed the October 2, 2018, incident from a "threat" to a "dispute."

43.     Other younger and non-Egyptian officers and sergeants were never threatened with physical harm including, Sergeant Cipolla, Sergeant Regina, Sergeant Vaiano, and Sergeant Pasynkov.

44.     Another discriminatory and abusive incident at the hands of Defendant Noonan occurred when, in or about 2018, Plaintiff wanted to park his car in the parking lot of the 123rd Precinct.  Defendant Noonan told Plaintiff, "If you ever park your car the way you parked it in the parking lot, I will f---ing tow it."

45.     Other similarly situated counterparts were not treated in this same manner and younger, non-Egyptian counterparts were allowed to park in the parking lot.  They include, Sergeant Cipolla, Sergeant Regina, Sergeant Vaiano, Sergeant Fazal, and Sergeant Pasynkov.

46.     Further Plaintiff was never allowed any time off to study for the Lieutenant exam, whereas younger, non-Egyptian similarly situated sergeants were allowed time off to study.

47.     Defendant Noonan also subjected Plaintiff to a hostile work environment by making specific comments about Plaintiff's national origin.

48.     One such example occurred when, in or about 2017, Defendant Noonan forced Plaintiff to perform a negative evaluation for a gay police officer.  Defendant Noonan then commented about this officer to Plaintiff by saying, "Kappa, if this guy was in your country they will take care of him right away, as killing him."

49.     Defendant Noonan also took specific actions in creating a hostile work environment for Plaintiff on the basis of Plaintiff's age and Egyptian national origin, as well as showing clear favor to other younger, non-Egyptian officers.

50.     For example, Plaintiff wrote two Command Disciplines concerning Officer Borg of that precinct to be handed over to Officer Borg. Upon information and belief, Defendant

8

Noonan did not convey the Command Disciplines to Officer Borg, but instead, ignored them. Defendant Noonan then warned Plaintiff to never discipline Officer Borg even when he "messes up" and is deserving of one.  Officer Borg is a non-Egyptian.

51.     Furthermore, Defendant Noonan took specific actions to retaliate against Plaintiff for Plaintiff's Internal Affairs complaint regarding the October 2, 2018, incident with Defendant Noonan.

52.     For example, Plaintiff was given a Command Discipline shortly after reporting the October 2, 2018, incident to Internal Affairs.  Defendant Noonan tried to demote Plaintiff from Sergeant to Police Officer with several negative results on Plaintiff's evaluation.

53.     Upon information and belief, this caused Plaintiff significant disadvantages as promotions and raises are significantly tied to performance evaluations.

54.     In or about the end of 2018, Captain Timothy Wilson took over as Plaintiff's supervisor.  The first thing that Defendant Wilson said to Plaintiff was "Noonan warned me about you," thereby continuing the hostile and discriminatory environment that Plaintiff was forced to be a part of.

55.     Plaintiff was discriminated against on the basis of his age and national origin by not being allowed back into his regular shift after Defendant Noonan had transferred him into the day tour even though there were two openings in his regular afternoon shift.  This again, was the severe disparate treatment that Plaintiff was subjected to as other younger non-Egyptian Sergeants were accommodated regarding their shifts and other desirable assignments.

## FIRST CAUSE OF ACTION

### (Age Discrimination – Disparate Treatment – Federal Claim
### Against the City of New York)

56.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1-55 as set forth above.

57.     Defendants are employers as defined in 29 U.S.C.A. § 630 and at all relevant times herein, employed Plaintiff.

58.     In violation of the Age Discrimination in Employment Act ("ADEA") and Older Workers Benefit Protection Act ("OWBPA") defendants discriminated against Plaintiff based on age by treating him differently as compared to younger similarly situated sergeants.

59.     This discrimination was a result of intentional actions by Defendants, deliberate indifference by Defendants, and /or the result of Defendants maintaining a policy or practice that treats detectives of Plaintiff's age differently from and less favorably than similarly situated employees who are younger than him, and subjecting him to disparate terms and conditions that similarly situated, younger individuals do not endure.

60.     Furthermore, by reason of the continuous nature of Defendants' discriminatory and disparate treatment of Plaintiff based upon his age, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

61.     As a result of the Defendants discrimination, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, loss of future benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees and costs.

## SECOND CAUSE OF ACTION

### (Age Discrimination- Disparate Treatment- New York
### State Claim Against all Defendants)

62.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1-61 as set forth above.

63.     At all relevant times, Defendants were an "employer" within the meaning of Executive Law § 292(5).

64.     Plaintiff is an "employee" within the meaning of Executive Law § 292(6).

65.     Plaintiff has been subjected to Defendants' disparate treatment, in whole or in part, on the basis of his age, in violation of the New York State Human Rights Law; Executive Law §296(1)(a), by treating him differently from and less favorably than similarly situated employees who were younger than him, subjecting him to disparate terms and conditions that similarly situated, younger individuals did not endure.

66.      Furthermore, by reason of the continuous nature of Defendants' discriminatory and disparate treatment of Plaintiff based upon his age, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

67.     As a result of the Defendants discrimination, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, loss of future benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees and costs.

## THIRD CAUSE OF ACTION

### (Age Discrimination – Disparate Treatment- New York City
### Claim Against all Defendants)

68.    Plaintiff re-alleges and incorporates by reference herein paragraphs 1-67 as set forth above.

69.    Plaintiff has been subjected to Defendants' disparate treatment on the basis of his age in violation of the New York City Administrative Code §8-107, by treating him differently from and less favorably than similarly situated employees who were younger than him, subjecting him to disparate terms and conditions that similarly situated, younger individuals did not endure.

70.    Furthermore, by reason of the continuous nature of Defendants' discriminatory and disparate treatment of Plaintiff based upon his age, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

71.    As a result of the Defendants discrimination, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, loss of future benefits,  mental anguish, and pain and suffering. He is also entitled to attorney's fees and costs.

## FOURTH CAUSE OF ACTION

### (Hostile Work Environment- New York State Claim
### Against all Defendants)

72.    Plaintiff re-alleges and incorporates by reference herein paragraphs 1-71 as set forth above.

73.     Defendants created a hostile work environment for Plaintiff, on the basis of his age and national origin when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment in violation of New York State Human Rights Law; Executive Law §296(1)(a).

74.     Furthermore, by reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff based upon his age, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

75.     As a result of the Defendants discrimination, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, loss of future benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees and costs.

## FIFTH CAUSE OF ACTION

### (Hostile Work Environment- New York City Claim Against all Defendants)

76.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1-75 as set forth above.

77.     Defendants NYPD, Redmond, Pfeffer, and Briscoe created a hostile work environment for Plaintiff, because of his age when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment, in an attempt to marginalize him within the EPU, in violation of the New York City Administrative Code 8-107(1)(a), et seq.

78.     Furthermore, by reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff based upon his age, which persisted throughout the relevant

periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

79.     As a result of the Defendants discrimination, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, loss of future benefits,  mental anguish, and pain and suffering. He is also entitled to attorney's fees and costs.

## SIXTH CAUSE OF ACTION

### (Unlawful Discrimination- Title VII, 42 U.S.C. § 2000 *et seq*.
### Against all Defendants)

80.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1-79 as set forth above.

81.     Defendants are employers as defined in Title VII, and at all relevant times herein, employed Plaintiff.

82.     In violation of 42 U.S.C. § 2000-e2(a), defendants discriminated against Plaintiff based on his national origin by treating him less favorably than his similarly situated non-Egyptian counterparts.

83.     This discrimination was a result of intentional actions by Defendants, deliberate indifference by Defendants, and /or the result of Defendants maintaining a policy or practice that has a disparate impact on Middle Eastern detectives.

84.     Furthermore, by reason of the continuous nature of Defendants' discriminatory and disparate treatment of Plaintiff based upon his national origin, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the

application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

85.     As a result of the Defendants discrimination, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, loss of future benefits, mental anguish, and pain and suffering. They are also entitled to attorney's fees and costs.

## SEVENTH CAUSE OF ACTION

**(National Origin Discrimination- Disparate Treatment- New York State Claim Against all Defendants)**

86.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1-85 as set forth above.

87.     Plaintiff has been subjected to Defendants' disparate treatment on the basis of his national origin in violation of the New York State Human Rights Law; Executive Law §296(1)(a).

88.     Furthermore, by reason of the continuous nature of Defendants' discriminatory and disparate treatment of Plaintiff, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

89.     As a result of the Defendants discrimination, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, loss of benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees and costs.

**EIGHTH CAUSE OF ACTION**

**(National Origin Discrimination – Disparate Treatment-
New York City Claim Against all Defendants)**

90.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1-89 as set forth above.

91.     Plaintiff has been subjected to Defendants' disparate treatment on the basis of his national origin in violation of the New York City Administrative Code §8-107, et seq.

92.     Furthermore, by reason of the continuous nature of Defendants' discriminatory and disparate treatment of Plaintiff, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

93.     As a result of the Defendants discrimination, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, loss of benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees and costs.

**NINTH CAUSE OF ACTION**

**(Retaliation - Federal Claims pursuant to the ADEA and OWBPA
Against All Defendants)**

94.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1-93 as set forth above.

95.     Plaintiff was subjected to retaliation in that negative actions were taken against him as a result of his participation in protected activity.

16

96.     As a result of the Defendants discrimination, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, loss of benefits, mental anguish, and pain and suffering. He is also entitled to attorney's fees and costs.

## TENTH CAUSE OF ACTION

### (Retaliation - New York State Claim under the Executive Law Against All Defendants)

97.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1-96 as set forth above.

98.     Plaintiff was subjected to retaliation in that negative actions were taken against him as a result of his participation in protected activity.

99.     As a result of the Defendants discrimination, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering. He is also entitled to attorney's fees and costs.

## ELEVENTH CAUSE OF ACTION

### (Retaliation - New York City Claim pursuant to the Administrative Code Against All Defendants)

100.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1-99 as set forth above.

101.     Plaintiff was subjected to retaliation in that negative actions were taken against him as a result of his participation in protected activity.

102.     As a result of the Defendants discrimination, Plaintiff suffered and continues to suffer damages, including but not limited to lost income,    mental anguish, and pain and suffering. He is also entitled to attorney's fees and costs.

## TWELFTH CAUSE OF ACTION

### (Assault – Against Defendants City of New York and Noonan)

103.    Plaintiff re-alleges and incorporates by reference herein paragraphs 1-102 as set forth above.

104.    On October 2, 2018, Defendant Noonan acted, intending to cause harmful or offensive contact with Plaintiff.

105.    Plaintiff reasonably believed he was about to be touched in a harmful or offensive manner, without his consent.

106.    Plaintiff did not consent to be touched by Defendant Noonan.

107.    Plaintiff was harmed by Defendant Noonan's conduct, suffering extreme emotional and mental anguish.

108.    Defendant Noonan's conduct was a substantial factor in causing Plaintiff's harm.

## THIRTEENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress – Against Defendants City of New York and Noonan)

109.    Plaintiff re-alleges and incorporates by reference herein paragraphs 1-108 as set forth above.

110.    In the course of assaulting Plaintiff, and creating an environment of potential violence and terror directed at Plaintiff, and permitting such to continue unabated and without providing proper and appropriate measures for abatement. Defendants City of New York and Noonan embarked on a malicious, willful, and grossly negligent course of conduct intended to cause Plaintiff to suffer extreme mental and emotional distress, agony, and anxiety.

111.    Defendant Noonan's conduct was intentional and malicious.

112.     Defendant Noonan's conduct was extreme and outrageous and is utterly intolerable in a civilized community.

113.     Defendant Noonan's conduct was calculated to and did cause emotional distress to Plaintiff.

114.     As a direct and proximate result of Defendant Noonan's intentional and negligent infliction of emotional distress, Plaintiff has suffered economic damages, and has suffered and continues to suffer non-economic damages, including mental and emotional injury and detrimental psychological trauma in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants, jointly and severally, awarding Plaintiff compensation and other damages in the form of back pay, front pay, and other monies and benefits unlawfully denied to Plaintiff, as well as for emotional distress, permanent damages to Plaintiff's emotional/mental well-being, loss of enjoyment of life, including pain and suffering, shame and humiliation.

1.     On the First Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

2.     On the Second Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

3.     On the Third Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

4.      On the Fourth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

5.      On the Fifth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

6.      On the Sixth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

7.      On the Seventh Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

8.      On the Seventh Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

9.      On the Ninth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

10.     On the Tenth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

11.     On the Eleventh Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

12.     On the Twelfth Cause of Action, judgment against Defendant Noonan for at least One Million Dollars ($1,000,000.00) in compensatory damages, in an exact amount to be determined at trial, and Two Million Dollars ($2,000,000.00) in punitive damages;

13.     On the Thirteenth Cause of Action, judgment against Defendant Noonan for at least One Million Dollars ($1,000,000.00) in compensatory damages, in an exact amount to be determined at trial, and Two Million Dollars ($2,000,000.00) in punitive damages;

That Plaintiff have such other, further, and different relief as the Court deem just, proper, and equitable in the circumstances, together with interest on all Causes of Action, attorney's fees, and costs and disbursements in this action.


Dated: New York, New York
       July 24, 2019

                                        BALLON STOLL BADER & NADLER, P.C.

                                  By:    s/Marshall B. Bellovin
                                         Marshall B. Bellovin, Esq. (MB5508)
                                         *Attorneys for Plaintiff*
                                         729 Seventh Avenue, 17th Floor
                                         New York, New York, 10019
                                         212-575-7900