```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
KAPPA FARID,                                      :
                                                  :
                              Plaintiff,          :     **MEMORANDUM AND ORDER**
                                                  :     19-CV-03463 (DLI)(RLM)
         -against-                                :
                                                  :
THE CITY OF NEW YORK, NEW YORK CITY               :
POLICE DEPARTMENT ("NYPD") DEPUTY                 :
INSPECTOR KENNETH NOONAN, individually,           :
and in his capacity as NYPD Deputy Inspector, and :
NYPD SERGEANT JOHN TUSCANO,                       :
                                                  :
                              Defendants.         :
----------------------------------------------------------------x
```
**DORA L. IRIZARRY, United States District Judge:**

On July 24, 2019, Plaintiff Kappa Farid ("Plaintiff") filed an Amended Complaint against the City of New York, New York City Police Department ("NYPD") Deputy Inspector Kenneth Noonan, individually, and in his capacity as NYPD Deputy Inspector, and NYPD Sergeant John Tuscano (collectively, "Defendants"), alleging violations of the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 621, *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*, New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, and New York common law tort claims for assault and intentional infliction of emotional distress. *See generally*, Amended Complaint ("Am. Compl."), Dkt. Entry No. 6.

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), Defendants moved to dismiss only Plaintiff's age discrimination claims under the ADEA, OWBPA, NYSHRL and NYCHRL, the related retaliation and hostile work environment claims, and the state law tort claims. *See*, Defs.' Mem. of Law in Supp. of Part. Mot. to Dism. ("Defs.' Mot."), Dkt. Entry No. 19-1. Plaintiff

opposed the motion. *See*, Plf.'s Mem. of Law in Opp'n to Defs.' Part. Mot. to Dism. ("Plf.'s Opp."), Dkt. Entry No. 23. Defendants replied. *See*, Defs.' Rep. Mem. of Law in Supp. of Part. Mot. to Dism. ("Defs.' Rep."), Dkt. Entry No 25. For the reasons set forth below, Defendants' motion to dismiss Plaintiff's federal and state age related discrimination, retaliation and hostile work environment claims, as well as Plaintiff's New York common law tort claims for assault and intentional infliction of emotional distress against Defendant City of New York, is granted. Defendants' motion to dismiss the New York common law tort claims for assault and intentional infliction of emotional distress against Defendant Noonan is denied.

## BACKGROUND

Plaintiff included his Equal Employment Opportunity Commission ("EEOC") charge of discrimination in his opposition to Defendants' motion. *See*, EEOC Charge, Dkt. Entry No. 22-1. The Court will consider Plaintiff's factual allegations in the EEOC Charge as this document is integral to the age discrimination claims. *See*, *Pfizenmayer v. Hicksville Pub. Schs.*, Defendant 2017 WL 5468319, at *4 (E.D.N.Y. Jan. 24, 2017) ("[T]he EEOC Intake Questionnaire and Charge of Discrimination are properly considered in opposition to defendants' motion [to dismiss], as, *inter alia*, they are integral to plaintiff's [age discrimination] claims.") (citations omitted). For purposes of deciding the instant motion, the Court also accepts as true, as it must, the factual allegations contained in the Amended Complaint and draws all reasonable inferences in Plaintiff's favor. *See*, *Dangler v. N.Y.C. Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999).

Plaintiff is a fifty-four-year-old sergeant in the NYPD of Egyptian descent whose first language is Arabic. Am. Compl. ¶¶ 7, 10. From about 2015 through 2016, Defendant John Tuscano, also an NYPD sergeant, constantly and regularly called Plaintiff derogatory names and mocked Plaintiff's Arabic accent. *Id.* ¶ 19. Defendant Tuscano told Plaintiff that he could not

understand Plaintiff's accent and said Plaintiff was "speaking gibberish." *Id.* ¶ 20. He told Plaintiff, "[y]ou have to learn how to speak English" and said that Plaintiff was "too old." *Id.*; EEOC Charge at 2. In or about 2016, another police officer named Gorman called Plaintiff a "sand monkey" and told Plaintiff to "go back to where [he] belong[s]." Am. Compl. ¶ 21.

In or about 2016, Plaintiff intervened when he saw Defendant Tuscano hitting a civilian at their precinct. *Id.* ¶ 23. Defendant Tuscano clenched his fist and ground his teeth at Plaintiff, which led Plaintiff to believe that Defendant Tuscano intended to strike him imminently. *Id.* After this incident, Plaintiff complained about the derogatory comments to supervisor Lieutenant Gonzalez and reported the comments to the Equal Employment Opportunity Office of the NYPD ("EEO-NYPD"). *Id.* ¶ 22. The EEO-NYPD gave Plaintiff the option to mediate the matter, which he did; however, he never was informed of the outcome and there was no change in his workplace environment. *Id.* ¶¶ 22, 24.

From September 2016 through November 2018, Defendant Noonan, an NYPD deputy inspector, was one of Plaintiff's supervisors. *Id.* ¶ 29. Plaintiff alleges that Defendant Noonan had supervisory authority over the personnel in Plaintiff's precinct and was a key decision maker with respect to personnel and staffing matters. *Id.* ¶ 15. On numerous occasions Defendant Noonan called Plaintiff derogatory names and mocked Plaintiff's Arabic accent. *Id.* ¶ 29. Defendant Noonan told Plaintiff that he could not understand his accent and would not permit Plaintiff to speak at team meetings, whereas younger, non-Egyptian participants were asked for comments. *Id.* ¶ 30. In or about 2017, Defendant Noonan forced Plaintiff to give a homosexual police officer in their precinct a negative evaluation and said, "Kappa, if this guy was in your country they will take care of him right away, as killing him." *Id.* ¶ 48. Plaintiff also alleges that Defendant Noonan did not convey two command disciplines that Plaintiff wrote concerning an

3

officer named Borg who is not Egyptian. *Id.* ¶ 50.

In or about May 2018, Defendant Noonan stood behind Plaintiff and stated angrily to "watch what he will do" to Plaintiff. *Id.* ¶ 31. Plaintiff interpreted Defendant Noonan's comment to be a threat of physical harm. *Id.* Plaintiff's fellow employees who were younger and not of Middle Eastern descent were not subjected to the same treatment by Defendant Noonan. *Id.* ¶ 32. Defendant Noonan also changed Plaintiff's shift from the afternoon midnight. *Id.* ¶ 33. Plaintiff requested that his shift remain the same as the change would harm his marriage, but Defendant Noonan denied his request stating that, "I am stubborn and I will do what I want." *Id.* As a result, Plaintiff's wife requested a divorce. *Id.* ¶ 34. Defendant Noonan subsequently changed Plaintiff's midnight shift to the morning shift, causing Plaintiff to lose his night differential pay, and was not allowed to return to his afternoon shift, even when there were two openings available. *Id.* ¶¶ 36, 55. The Amended Complaint is silent as to where there was a differential in pay between the afternoon and morning shifts. Sergeants Vaiano and Nyhus, two younger, non-Egyptian officers, were permitted to change their shifts for different personal reasons. *Id.* ¶ 35. Defendant Noonan further told a supervisor, Lieutenant Hasler, "I don't want to see (Plaintiff) on patrol," which prevented Plaintiff from working overtime. *Id.* ¶ 37. Plaintiff was the only person in his unit who was excluded from working overtime. *Id.* Sergeants Vaiano, Pasynkov and Liter, all younger, non-Egyptian officers, were allowed overtime hours. *Id.*

In or about 2018, Defendant Noonan told Plaintiff, "[i]f you ever park your car the way you parked it in the [precinct] parking lot, I will f---ng tow it." *Id.* ¶ 44. Plaintiff's younger, non-Egyptian counterparts, including Sergeants Cipolla, Regina, Vaiano, Fazal and Pasynkov, were permitted to park in the lot. *Id.* ¶ 45. Younger, non-Egyptian sergeants also were granted time off to study for the lieutenant exam, but Plaintiff was not. *Id.* ¶ 46.

On October 2, 2018, Defendant Noonan physically threatened Plaintiff by stating, "I will come and f--- you up." *Id.* ¶ 39. Plaintiff believed he was in immediate danger and that Defendant Noonan intended to attack him. *Id.* Plaintiff's counterparts, Sergeants Cipolla, Regina, Vaiano and Pasynkov, who were younger and not of Middle Eastern descent, were not subjected to physical threats. *Id.* ¶ 43. After Plaintiff reported the October 2, 2018 incident to the Internal Affairs Bureau ("IAB"), Defendant Noonan gave Plaintiff a command discipline, forced a lieutenant to downgrade Plaintiff's performance evaluation and tried to demote Plaintiff from sergeant to police officer. *Id.* ¶ 52; EEOC Charge at 4. Plaintiff alleges that the negative evaluation disadvantaged him because promotions and raises are tied to performance evaluations. Am. Compl. ¶ 53.

In or about the end of 2018, Plaintiff learned from Captain Timothy Wilson, his new supervisor, that Defendant Noonan had "warned" him about Plaintiff. *Id.* ¶ 54. On January 29, 2019, Plaintiff filed a charge of age, race and national origin discrimination and retaliation against Defendants with the EEOC. *Id.* ¶ 5; EEOC Charge at 1. On March 15, 2019, the EEOC issued Plaintiff a right to sue letter. *See*, Exhibit 1 to Am. Compl, Dkt. Entry No. 6-1. In or about April 2019, Plaintiff complained to the IAB about Sergeant Faljean who pushed Plaintiff twice and sent Plaintiff "insulting text messages based on his age." Am. Compl. ¶ 27.

Plaintiff alleges the following claims: age discrimination against Defendant City of New York pursuant to the ADEA and OWBPA; retaliation against Defendants pursuant to the ADEA, OWBPA, NYSHRL and NYCHRL; age based discrimination and hostile work environment against Defendants pursuant to the NYSHRL and NYCHRL; national origin discrimination against Defendants pursuant to Title VII, NYSHRL and NYCHRL; hostile work environment, based on national origin, against Defendants pursuant to the NYSHRL; and New York common law tort

claims for assault and intentional infliction of emotional distress against Defendant City of New York and Defendant Noonan. *Id.* ¶¶ 56-114.

Defendants move to dismiss Plaintiff's age discrimination and related retaliation and hostile work environment claims under federal and state law. Defendants also move to dismiss Plaintiff's New York common law tort claims for assault and intentional infliction of emotional distress. Defendants are not seeking dismissal of any claims based on Plaintiff's national origin.

## **LEGAL STANDARD FOR FAILURE TO STATE A CLAIM**

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendants "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6), a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to

6

'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit, and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See*, *e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

## DISCUSSION

I. **ADEA and OWBPA Claims**

The OWBPA "does not give rise to a cause of action separate from a violation of the ADEA[.]" *Jiggets v. United Parcel Service*, 2017 WL 1164698, at *5 (S.D.N.Y. Mar. 27, 2017). Therefore, Plaintiff's OWBPA claims against Defendants for retaliation and against Defendant City of New York FOR age discrimination are dismissed. The ADEA also does not provide for individual liability. *See*, *Bahr v. City Univ. of New York*, 2016 WL 8711060, at *6 (E.D.N.Y. Dec. 9, 2016). Accordingly, Plaintiff's ADEA claims for retaliation against individual Defendants Noonan and Tuscano are dismissed. *See*, *Cherry v. Toussaint*, 50 F. App'x 476, 477 (2d Cir. 2002) (affirming district court's dismissal of ADEA claims against individual defendants).

A. **ADEA Discrimination Claim against Defendant City of New York**

Before bringing an ADEA claim, a plaintiff first must exhaust all administrative remedies. *See*, *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82-83 (2d Cir. 2001) ("Exhaustion of remedies is a precondition to [a] suit" under the ADEA.). Plaintiff's claims either must have been "included in" or "reasonably related to the allegations contained in [his] EEOC charge." *Id.* at 83 (internal quotation marks omitted). Here, Plaintiff alleged age discrimination and retaliation in his EEOC Charge. *See*, EEOC Charge at 1. The EEOC also issued Plaintiff a right to sue letter. *See*, Exhibit 1 to Am. Compl. Thus, Plaintiff properly exhausted his administrative remedies and timely filed

7

this action.

Under the ADEA, an employer shall not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). To establish a *prima facie* case of age discrimination, Plaintiff must show "(1) that [h]e was within the protected age group, (2) that [h]e was qualified for the position, (3) that [h]e experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). "[A]t the motion to dismiss stage, an ADEA plaintiff need not plead every element of a prima facie case, only facts which plausibly suggest that (1) the employer took an adverse [employment] action and (2) age was the 'but for' cause of that adverse action." *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015)).

The employer's adverse action must be a "materially adverse change" in the terms and conditions of employment and "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* at 32 (quoting *Kasner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007)). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). (internal citation omitted). The ADEA does not set forth a "general civility code[.]" *Almontaser v. New York City Dep't of Educ.*, 2014 WL 3110019, at *8 (E.D.N.Y. July 8, 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Everyday workplace

grievances, disappointments, and setbacks do not constitute adverse employment actions[.]" *La Grande v. DeCrescente Distributing Co., Inc.*, 370 F. App'x 206, 211 (2d Cir. 2010).

Plaintiff is above the age of forty and within the protected age group of the ADEA. *See*, 29 U.S.C. § 631(a). Many of Plaintiff's allegations include everyday workplace grievances that are not plausible adverse employment actions. These include Plaintiff's dispute with Defendant Noonan over a parking space, Defendant Noonan excluding Plaintiff from participating in team meetings, and Defendant Noonan's comments, which Plaintiff allegedly found threatening and abusive. *See*, *Phillip v. Dep't of Sanitation*, 2019 WL 1004588, at *9 (E.D.N.Y. Feb. 28, 2019) ("[V]erbal abuse is typically insufficient to constitute an adverse employment action because [negative] or otherwise insulting statements are hardly even actions, let alone adverse actions.") (internal citation and quotation marks omitted); *Davis v. Verizon Wireless*, 389 F. Supp.2d 458, 478 (W.D.N.Y. 2005) ("Menacing looks, name calling, or being shunned by co-workers does not constitute an adverse employment action. Nor does exclusion from meetings.") (internal citation omitted). The denial of Plaintiff's request to take time off to study for the Lieutenant exam also is not a plausible adverse employment action. *See*, *Cousar v. New York-Presbyterian/Queens*, 2019 WL 4015440, at *9 (E.D.N.Y. Aug. 26, 2019) ("[D]enial of a plaintiff's request for time off, absent a complete prohibition, does not rise to the level of an adverse employment action.")

The Amended Complaint includes three allegations that, under certain circumstances, might be construed as adverse employment actions. First, Plaintiff alleges that Defendant Noonan changed Plaintiff's shift from the afternoon to the midnight shift, which purportedly harmed Plaintiff's marriage, and from the midnight to the morning shift, which caused Plaintiff to lose night differential pay. Am. Compl. ¶¶ 33-34, 36. Second, Defendant Noonan told Lieutenant Hasler that he did not want Plaintiff on patrol, which prevented Plaintiff from working overtime.

9

*Id.* ¶ 37. Third, Defendant Noonan gave Plaintiff a command discipline and forced a lieutenant to give Plaintiff a negative performance evaluation, which Plaintiff alleges hindered his prospects of receiving promotions and raises *Id.* ¶¶ 52-53; EEOC Charge at 4.

With respect to Plaintiff's first allegation, typically "shift changes without a loss of pay or other material changes in working conditions do not constitute an adverse employment action." *Booker v. Fed. Res. Bank of New York*, 2003 WL 1213148, at *11 (S.D.N.Y. Mar. 17, 2003). A shift change that "makes a normal life difficult for the employee" can constitute an adverse employment action. *Little v. Nat'l Broadcasting Co., Inc.*, 210 F. Supp.2d 330, 377 (S.D.N.Y. 2002). Plaintiff alleges that the shift changes negatively impacted his marriage, caused his wife to request a divorce, and deprived Plaintiff of night differential pay. Am. Compl. ¶¶ 33-34, 36. While the Court accepts these allegations as true, Plaintiff does not plead any facts to support a finding that Defendant Noonan would not have changed Plaintiff's shifts but for his age.

Plaintiff baldly alleges that Defendant Noonan changed Plaintiff's shifts in or about May of 2018 "after Plaintiff had complained about the comments pertaining to his . . . age." *Id.* ¶ 33. Plaintiff presumably refers to his complaints to Lieutenant Gonzalez and the EEO-NYPD in or about 2016 about Sergeant Tuscano's isolated comment that he was "too old." *Id.* ¶ 22; EEOC Charge at 1. Plaintiff does not allege that Defendant Noonan made any discriminatory comments about his age or that Defendant Noonan was aware of Plaintiff's complaint to Lieutenant Gonzalez and the EEO-NYPD. Thus, Defendant Noonan's decision to change Plaintiff's shifts does not appear to have any nexus to Sergeant Tuscano's comment that Plaintiff complained about nearly two years earlier and does not support an inference of age discrimination.

Plaintiff additionally claims that two younger officers, Sergeants Vaiano and Nyhus, each were permitted to change their shifts. Am. Compl. ¶ 35. "[S]howing that the employer treated

10

plaintiff 'less favorably than a similarly situated employee outside his protected group' [is] a recognized method of raising an inference of discrimination[.]" *Mandell v. Cnty. of Suffolk & John Gallagher*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). A plaintiff must show he was "similarly situated in all material respects to the individuals with whom [h]e seeks to compare [him]self." *Id.* "To be similarly situated and qualify as a comparator, even at the motion to dismiss stage, 'other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct[.]'" *Campbell v. Correctional Medical Care Inc.*, 2014 WL 2608334, at *4 (W.D.N.Y. June 11, 2014) (quoting *Mazella v. RCA Global Comms*, 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986)).

Plaintiff has not demonstrated that he is similarly situated to Sergeants Vaiano and Nyhus. Plaintiff only generally alleges that Defendant Noonan had supervisory authority over the personnel in the precinct and was a "key decision maker" on staffing matters. Am. Compl. ¶ 15. However, Plaintiff does not plead any facts about the ages of these sergeants, apart from calling them "younger," to demonstrate that they fall outside his protected age group. Plaintiff is fifty-four years old. *Id.* ¶ 7. His younger sergeant colleagues may very well be over the age of forty and within his protected age group. *See*, *Ndremizara v. Swiss Re America Holding Corp.*, 93 F. Supp.3d 301, 316-317 (S.D.N.Y. 2015) (dismissing ADEA discrimination claim when plaintiff failed to plead ages of "younger" individuals treated more favorably); *Bohnet v. Valley Stream Union Free School Dist. 13*, 30 F.Supp.3d 174, 180-181 (E.D.N.Y. 2014) (same). Plaintiff also does not indicate if these sergeants received night differential pay due to their shift changes. Accordingly, Plaintiff has not raised a plausible inference based on comparator evidence that his

11

shift changes and loss of night differential pay would not have occurred but for his age.

Plaintiff's claim that Defendant Noonan played a role in denying him the opportunity to work overtime may constitute an adverse employment action but not under the circumstances presented here. *See*, *Castillo v. Time Warner Cable of New York City*, 2011 WL 3475419, at *5 (S.D.N.Y. Aug. 9, 2011) (noting that denial of requested overtime is a well established adverse employment action). Plaintiff again references comparators, specifically Sergeants Vaiano, Pasynkov and Liter, as examples of his "younger" colleagues who were permitted to work overtime, but he does not demonstrate that he was similarly situated to these individuals. Am. Compl. ¶ 37. Plaintiff fails to plead facts about the sergeants'' ages to demonstrate that they fall outside his protected age group and does not state if Defendant Noonan, Lieutenant Hasler or another colleague was responsible for deciding their collective overtime requests. Therefore, Plaintiff has not raised a plausible inference based on comparator evidence that his denial of overtime opportunities would not have occurred but for his age.

Lastly, Plaintiff's allegations that Defendant Noonan gave him a command discipline and forced a lieutenant to give him a negative evaluation may constitute adverse employment actions, but not under the circumstances presented here. *See*, *Smith v. City of New York*, 2018 WL 3392872, at *4 (S.D.N.Y. July 12, 2018); *Bowen-Hooks v. City of New York*, 13 F. Supp.3d 179, 217 (E.D.N.Y. 2014). Plaintiff baldly alleges that the negative evaluation disadvantaged him because promotions and raises are tied to his performance evaluations. Am. Compl. ¶ 53. However, Plaintiff does not plead any facts to support that he would not have received the negative evaluation or command discipline but for his age. For all these reasons, Plaintiff's claim for age discrimination against Defendant City of New York is dismissed.

### B. ADEA Retaliation Claim against Defendant City of New York

The ADEA prohibits employers from retaliating against their employees for opposing age discrimination in the workplace. *See*, 29 U.S.C. § 623(d). To establish a *prima facie* case of retaliation, a plaintiff must establish that "(1) [he] engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp.3d 5, 33 (E.D.N.Y. 2015) (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam)). A "materially adverse action" in an ADEA retaliation claim refers to one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Cerni v. J.P. Morgan Secs. LLC*, 208 F. Supp.3d 533, 539 (S.D.N.Y. 2016) (quoting *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006)). As with Plaintiff's ADEA discrimination claim, Plaintiff's ADEA retaliation claim "may survive a motion to dismiss without establishing a *prima facie* case." *Ingrasia v. Health and Hosp. Corp.*, 130 F. Supp.3d 709, 723 (E.D.N.Y. 2015).

Plaintiff alleges that he was subjected to retaliation in that "negative actions were taken against him as a result of his participation in protected activity." Am. Compl. ¶ 95. In or about 2016, Plaintiff complained to Lieutenant Gonzalez and the EEO-NYPD about Defendant Tuscano's comment that he was "too old." *Id.* ¶ 22; EEOC Charge at 1. His complaint went to mediation, though Plaintiff claims he was not informed of the result. *Id.* As stated previously, Plaintiff did not allege that Defendant Noonan knew of this complaint when he changed Plaintiff's shifts nearly two years later. Plaintiff also does not claim that his employer was aware he was claiming age discrimination under the ADEA when he made his complaint.

Plaintiff engaged in protected activity when he complained of age discrimination in the EEOC complaint he filed on January 29, 2019 and reported Sergeant Faljean's "insulting text messages based on his age" to the IAB in or about April 2019. Am. Compl. ¶¶ 5, 27; *See*, *Jones v. Target Corp.*, 2016 WL 50779, at *7 (E.D.N.Y. Jan. 4, 2016) ("Filing either a formal or informal complaint challenging discrimination is considered protected activity for purposes of retaliation claims" under the ADEA.). Plaintiff does not allege that any adverse action was taken against him for making these complaints. Accordingly, Plaintiff's retaliation claim premised on his reports of age discrimination against Defendant City of New York is dismissed.

## II. NYSHRL and NYCHRL Claims

As the Court has dismissed Plaintiff's ADEA and OWBPA claims for age discrimination and retaliation, the Court declines to exercise supplemental jurisdiction over Plaintiff's age related discrimination, retaliation and hostile work environment claims under the NYSHRL and NYCHRL. *See*, 28 U.S.C. § 1367(c)(3); *Oneida Indian Nation of New York v. Madison County*, 665 F.3d 408, 437 (2d Cir. 2011) ("[W]e have repeatedly said that 'if a plaintiff's federal claims are dismissed before trial, 'the state law claims should be dismissed as well.'") (quoting *Brzak v. United Nations*, 597 F.3d 107, 113-114 (2d Cir. 2010)). Accordingly, these state law claims are dismissed.

## III. Assault and Intentional Infliction of Emotional Distress Claims

Plaintiff alleges New York common law tort claims for assault and intentional infliction of emotional distress against Defendants City of New York and Noonan that are related to Plaintiff's claims for national origin discrimination under Title VII. Defendants argue that Plaintiff's claims should be dismissed because Plaintiff did not file a notice of claim under New York General Municipal Law § 50-e. Defs.' Mot. at 12.

14

"As a 'condition precedent' to commencing a tort action against New York municipalities, or any of their officers, agents, or employees, New York General Municipal Law § 50-e requires plaintiffs to file a notice of claim within ninety days after the claim arises." *Olsen v. Cnty. of Nassau*, 2008 WL 4838705, at *1 (E.D.N.Y. Nov. 4, 2008) (citing *Chesney v. Valley Stream Union Free Sch. Dist.*, 2006 WL 2713934, at *8 (E.D.N.Y. Sept. 22, 2006)). "[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (emphasis omitted). "A federal court lacks the jurisdiction to waive the notice requirements of Gen. Mun. Law [§] 50-e . . . or to grant leave to file a late notice of claims for pendent state tort claims." *Roberts v. New York City Dep't of Corrections*, 1998 WL 391815, at *1 (E.D.N.Y. Apr. 30, 1998). Notice of claim requirements are strictly construed, and "failure to comply with the requirements typically results in dismissal due to failure to state a cause of action." *Chesney*, 2006 WL 2713934, at *9 (citing *Hardy*, 164 F.3d at 793-794). "[T]he burden is on Plaintiff to demonstrate compliance with the notice of claim requirements." *Peritz v. Nassau County Board of Cooperative Educ. Servs.*, 2019 WL 2410816, at *4 (E.D.N.Y. June 7, 2019).

Plaintiff has not filed a notice of claim but argues that his EEOC charge of discrimination and Complaint in this action satisfy the notice of claim requirement. *See*, Plf.'s Opp. at 13. Numerous courts in the Second Circuit have rejected the argument that an EEOC charge of discrimination is sufficient to comply with New York General Municipal Law § 50-e. *See*, *Olsen*, 2008 WL 4838705 at *2 (collecting cases). The notice of claim requirement also is a condition precedent to commencing a tort action against a municipality. *See*, N.Y. Gen. Mun. Law § 50-e(1)(a). The Complaint initiating this action does not satisfy the notice of claim requirement. Accordingly, Plaintiff's assault and intentional infliction of emotional distress claims against Defendant City of New York are dismissed for failure to file a notice of claim.

The Court declines to dismiss Plaintiff's tort claims against Defendant Noonan at this juncture. With respect to these claims, service of a notice of claim upon the City of New York is required, "<u>only if</u> the [City] has a statutory obligation to indemnify" Defendant Noonan. *McGrath v. Arroyo*, 2019 WL 3754459, at *18 (E.D.N.Y. Aug. 8, 2019) (quoting *Hardy v. Daly*, 748 F. App'x 379, 381 (2d Cir. 2018)). The City must indemnify Defendant Noonan "only if his liability arose from conduct within the scope of his employment." *Id.* (internal quotation marks omitted). "To be indemnified, [Defendant Noonan] must not have been acting in violation of any rule or regulation of his agency and the [Plaintiff's alleged] injury [must not have resulted] from intentional wrongdoing[.]" *Id.* (internal quotation marks omitted).

Plaintiff's assault and intentional infliction of emotional distress claims against Defendant Noonan are intentional torts that are unlikely to be indemnified by Defendant City of New York. *See*, *Hardy*, 748 F. App'x at 382 (finding that individual defendants would not have a right to indemnification for intentional torts). Whether Defendant Noonan acted within the scope of his employment also is a question of fact that cannot be resolved on a motion to dismiss the pleadings. Accordingly, Defendants' motion to dismiss Plaintiff's tort claims against Defendant Noonan for failure to file a notice of claim is denied without prejudice. *See*, *Kavazanjian v. Rice*, 2008 WL 5340988, at *6 (E.D.N.Y. Dec. 22, 2008) (plaintiff's claims for assault and intentional infliction of emotional distress were "not procedurally barred" by his failure to file a notice of claim).

## **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's federal and state age related discrimination, retaliation and hostile work environment claims, as well as Plaintiff's New York common law tort claims for assault and intentional infliction of emotional distress against Defendant City of New York, is granted. Defendants' motion to dismiss the New York common law tort claims for assault and intentional infliction of emotional distress against Defendant Noonan is denied.

SO ORDERED.

Dated: Brooklyn, New York
       May 20, 2021

/s/
DORA L. IRIZARRY
United States District Judge